<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LOISKA JOHNSON, | Case No.:  2:17-cv-11765 (PAZ) |
| Plaintiff, | **OPINION** |
| v. | |
| ANDREW SAUL,<br>Commissioner of Social Security, | |
| Defendant. | |

**APPEARANCES:**

JAMES LANGTON
LANGTON & ALTER, ESQS.
1600 ST. GEORGES AVENUE
PO BOX 1798
RAHWAY, N.J.  07065
        On behalf of Plaintiff

EDWARD CHARLES TOMPSETT
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
P.O. BOX 41777
PHILADELPHIA, P.A.  19147
        On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Loiska Johnson for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. §§ 401, et seq.).  Plaintiff appeals from the final decision of the Administrative Law Judge ("ALJ") denying the application; Defendant, the Commissioner of Social Security ("the Commissioner"), opposes

Plaintiff's appeal.[1]  After careful consideration of the record, including the ALJ hearing transcripts, the ALJ's decision, and the pleadings and memoranda of the parties, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f).  For the reasons set forth below, the Court reverses the Commissioner's decision that Plaintiff was not disabled and remands the case in accordance with the following instructions.

## I.    PROCEDURAL HISTORY

On October 1, 2013, Plaintiff applied for DIB alleging a disability onset date of January 25, 2010.  (R. 166-67.)[2]  On December 19, 2013, the Commissioner determined that Plaintiff was not disabled and denied the application.  (R. 80.)  On February 24, 2014, Plaintiff's application was denied on reconsideration.  (R. 93.)  On October 22, 2015, an ALJ held a hearing on Plaintiff's application; Plaintiff was represented by counsel at the hearing.  (R. 38-79)  On March 9, 2016, the ALJ issued a decision denying Plaintiff's application.  (R. 17-37.)  On September 14, 2017, the Appeals Council denied Plaintiff's request for review (R. 1-6), thereby affirming the ALJ's decision as the "final" decision of the Commissioner.  On November 17, 2017, Plaintiff timely filed this appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  ECF No. 1.  On August 28, 2018, Plaintiff consented to have a U.S. Magistrate Judge conduct all further proceedings in the case to disposition pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  ECF No. 8.[3]  On April 25, 2019, the case was reassigned to the undersigned Magistrate Judge.  ECF No. 16.

## II.    LEGAL STANDARD

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security for a six-year term that expires on January 19, 2025.  Mr. Saul is therefore substituted as Defendant in his official capacity.

[2] "R." refers to the continuous pagination of the administrative record on appeal.  ECF No. 6.

[3] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision.  *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

A.    **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186

4

F.3d 422, 429 (3d. Cir. 1999)).  "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored."  *Id.* at 705.  As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings.  *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).  Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).  A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.  In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays.  *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).  An award is "especially

appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.    Standard for Awarding Benefits

Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for Social Security disability benefits based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. §§ 404.1505(a), 416.905(a).[4] An impairment is "medically determinable" if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Thus, an impairment can be established by objective medical evidence from an acceptable medical source, but cannot be established by a statement of symptoms, a diagnosis, or a medical opinion. *Id.* §§ 404.1521, 416.921.

The process for determining an adult's claim for Social Security disability benefits involves a five-step sequential inquiry. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a).[5] The claimant bears the burden of proof at Steps One through Four. At Step Five, the burden shifts to the Commissioner.

---

[4] Disability Insurance Benefits (*see* 42 U.S.C. §§ 401, et seq.) and Supplemental Security Income (*see* 42 U.S.C. §§ 1381, et seq.) are separate programs under Title II and Title XVI, respectively, of the Social Security Act. Although they are subject to different qualification requirements, the standard for determining whether a claimant is disabled is the same for both programs. *See Rutherford v. Barnhart*, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). The Court endeavors to provide citations to the applicable regulations for each program but may provide citations only to the disability insurance benefits regulations. *See Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

[5] This case arises from a claim filed before March 27, 2017 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. §§ 404.1527 and 416.927.

*Id.* §§ 404.1512, 416.912; *see Holley v. Colvin*, 975 F. Supp.2d 467, 476-77 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014).  At each Step, the ALJ must consider the combined effect of all the claimant's physical and mental impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity to proceed to the next Step.  20 C.F.R. §§ 404.1523(c), 416.923(c).

At Step One, the ALJ decides whether the claimant is currently engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Substantial gainful activity is work activity that involves doing significant physical or mental activities and is usually done for pay or profit.  *Id.* §§ 404.1572(a) & (b), 416.972(a) & (b).  If the claimant is engaging in such activity, then the inquiry ends because the claimant is not disabled.

"The [Step Two] inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).  At this Step, the ALJ decides whether the claimant has a medically determinable impairment or a combination of such impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is severe if it significantly limits a claimant's ability to perform basic work activities.  An impairment or combination of impairments is not severe if the claimant has a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations.  *Id.* §§ 404.1522, 416.922.  If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  If the claimant's specific

impairment is not listed, the ALJ will consider the most closely analogous listed impairment for purposes of deciding medical equivalence. *Id*. §§ 404.1526(b)(2), 416.926(b)(2). If the claimant has an impairment or combination of impairments that meets or medically equals a Listing, then the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. §§ 404.1509, 416.909.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC"), determine the physical and mental demands of the claimant's past relevant work, and determine whether claimant has the level of capability needed to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). RFC is the claimant's maximum remaining ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. Past relevant work is work performed (either as the claimant actually performed it or as it is generally performed in the national economy) either within the last 15 years or within 15 years prior to the disability date. In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *Id*. §§ 404.1560, 404.1565, 416.945, 416.960. If the claimant's RFC enables her/him to perform past relevant work, then the claimant is not disabled.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant is incapable of doing so, then s/he is presumed to be disabled if her/his impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

In deciding the claimant's ability to perform other jobs that exist in significant numbers in the national economy, the ALJ must consider whether the claimant's impairment and symptoms

result in exertional and/or non-exertional limitations.  The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id*. §§ 404.1569a(a) & (b), 416.969a(b).  Non-exertional limitations affect a claimant's ability to meet all other demands of a job (i.e., non-strength demands), including but not limited to difficulty performing postural or manipulative functions such as reaching, stooping, climbing, crawling, crouching, handling, or fingering; difficulty tolerating environmental or physical features of certain work settings such as dust or fumes; or difficulty maintaining concentration or understanding detailed instructions.  *Id*. at §§ 404.1569a(c), 416.969a(c).

If the claimant has no non-exertional limitations and can perform all or substantially all exertion demands at a given level, then the ALJ must use the Medical-Vocational Rules (also referred to as "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2.  20 C.F.R. §§ 404.1569a(b), 416.969a(b).  The Grid Rules reflect various combinations of RFC, age, education, and work experience, and direct a finding of disabled or not disabled for each combination.  If the claimant also has any non-exertional limitations or cannot perform substantially all the exertional demands at a given level, then the Grid Rules are used as a framework for decision-making unless there is a rule that directs a conclusion of disabled without considering the additional non-exertional or exertional limitations.  *Id*. §§ 404.1569a(d), 416.969a(d).   If the claimant has solely non-exertional limitations, then the Grid Rules provide a framework for decision-making.  *Id*. §§ 404.1569a(c), 416.969a(c).

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was nearly forty-five years old on January 15, 2010 (alleged onset date), and the date last insured was December 31, 2014.  (R. 22, 31.)  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period between the alleged onset date and date last insured.  (R. 22.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:  depressive disorder, anxiety disorder, alcohol abuse in remission, osteoarthritis, degenerative joint disease, and degenerative disc disease.  (R. 22.)  Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any Listing.  (R. 22.)  At Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform light work subject to various non-exertional limitations.  (R. 24.)  The ALJ also found at Step Four that Plaintiff was unable to perform any past relevant work as a secretary.  (R. 31.)  At Step Five, the ALJ found that a finding of not disabled would be directed by Grid Rules 202.21 and 202.14 if Plaintiff had the RFC to perform the full range of light work.  (R. 31.)  The ALJ also found at Step Five that at least 3 jobs – small products assembler, office aide, and housekeeping cleaner – existed in significant numbers in the national economy and could be performed by an individual with Plaintiff's age, education, work experience, and RFC.  (R. 32.)  The ALJ concluded that Plaintiff was not disabled from the alleged onset date through December 31, 2014 (decision date).  (R. 32.)

Plaintiff contends that the ALJ committed reversible error by:  (1) violating Plaintiff's due process rights and raising the appearance of bias; (2) at Step Three, by failing to analyze all of Plaintiff's impairments individually and in combination; (3) at Step Four, by failing to craft an RFC supported by substantial evidence; and (4) at Step Five, by omitting outcome-determinative VE testimony.  Plaintiff asks the Court to reverse and remand for payment or, alternatively, for a

new hearing before a different ALJ.[6]  Defendant contends that the ALJ's decision should be affirmed in its entirety because it correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence.

## IV.    SUMMARY OF RELEVANT EVIDENCE

### A.    <u>Medical Evidence.</u>

#### 1.    **Treating Providers.**

The relevant period is January 2010 through December 2014.  The record evidence from Plaintiff's treating providers consists of 86 pages, including evidence that post-dates the relevant period.  Medical imaging evidence consists of:  August 2012 lumbar spine x-rays revealing minimal osteophyte formation and otherwise unremarkable radiographs (R. 268); August 2012 left hip x-rays revealing minimal osteoarthritis with minimal osteophyte formation, normal joint spaces, and normal range of motion (R. 268); October 2012 lumbar spine x-rays revealing unremarkable radiographs (R. 272); October 2012 cervical spine x-rays revealing mild reversal of normal lordosis likely related to muscle spasm (R. 273); May 2013 left hip MRI revealing minimal degenerative symmetric arthritis (R. 289); and October 2014 hip/spine DEXA scan revealing normal bone mineral density (R. 369).  Treatment notes were provided from:  North Hudson Community Action Health Center (general medicine) for March 2011 to July 2015 (R. 329-62); Dr. Tunku Abubakar (psychiatry) for January 2012 to July 2013 (R. 294-303); Dr. Julio Quintanilla (internal medicine) for March and April 2013 (R. 274-88); Dr. Thomas D'Amato (psychiatry) for

---

[6] The "Opening Statement" section of Plaintiff's brief requests a remand for payment or, in the alternative, for a new hearing.  ECF No. 14 at 1.  The opening paragraph of the "Summary of Argument" section requests the same.  *Id*. at 9.  The concluding paragraph of the "Summary of Argument" section, and the concluding paragraphs of the Step Three, Due Process, and Step Four argument sections request only a remand for a new hearing.  *Id*. at 15, 23, 27, 38.

July 2013 to July 2015 (R. 319-24); and Dr. Robert Fogari (rheumatology) for October and December 2014 (R. 363, 366-68).

In July 2015, Dr. D'Amato completed a Medical Assessment of Ability To Do Work Related Activities (Mental). He opined that Plaintiff had a fair ability to relate to co-workers; use judgment; function independently; understand, remember and carry out simple job instructions; and maintain personal appearance. He also opined that she had poor to no ability to follow work rules; deal with the public; interact with supervisors; deal with work stress; understand, remember, and carry out detailed but not complex job instructions; understand, remember, and carry out complex job instructions; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability. He further opined that she had a limited attention span, poor concentration, limited insight, and limited judgment. He supported these opinions with reference to Plaintiff's chronic mental illness, "periods of panic attacks, sadness, depression," poor crying spells, and poor support system. Dr. D'Amato concluded that Plaintiff was unable to work in any capacity. (R. 316-18.)

## 2. Consultative Examiners.

In August 2012, Plaintiff underwent a consultative examination by Dr. Hillary Kern (physiatrist). Plaintiff stated that she was single, actively pursuing work after being laid off in 2009, and taking a medical billing and coding course. She listed her medications as Zoloft (Sertraline), Paxil (Paroxetine), and, as needed, Ibuprofen and Flexeril (Cyclobenzaprine). She complained of left greater than right hip and groin pain that worsened when climbing stairs and with prolonged standing/walking. She also complained of two episodes of low back pain in November and December 2011 that worsened with prolonged standing. She denied any bilateral lower extremity numbness or paresthesia. Physical examination findings included full range of

motion without pain in lumbosacral spine; negative bilateral straight leg raise; full range of motion in right hip; mild decreased passive range of motion in left hip; positive left Faber/Patrick's; positive left hip compression test with pain referable to the left medial groin; positive pain referable to the left groin with full passive hip flexion; no neurological deficits; intact heel and toe gait; and sits/stands comfortably. Dr. Kern assessed: suggestive of left femur acetabular impingement, rule out left hip labral tear; may be suggestive of lumbosacral degenerative disk disease, which is presently asymptomatic; and no evidence of bilateral lumbosacral radiculopathies. Dr. Kern opined:

> [Plaintiff] should limit lifting less than or equal to 20 pounds, limit repetitive squatting and forward spine flexion. She otherwise would be able to function on the job in both a sedentary position as well as in a more active position with limitations as above. She should limit ambulation to less than or equal to 3 blocks, standing tolerance less than or equal to 20 minutes, and sitting tolerance for 45 minutes. She is employable as stated above.

(R. 263-65.) Dr. Kern also completed a Passive Range of Motion Chart that reflected no limitations, that Plaintiff could walk at a reasonable pace, and that she did not require a cane. (R. 267-68.)

Also in August 2012, Plaintiff underwent a consultative examination by Dr. Kim Arrington (psychologist). (R. 269-71.) Plaintiff stated that she traveled by bus to the appointment, was single, resided alone, and in 2009 was laid off from her position as an administrative assistant because of the economy. She met with a psychiatrist in 2005 due to anxiety but did not continue treatment. She resumed psychiatric treatment in January 2012 and took Zoloft and Paxil daily. She also took Ibuprofen and Flexeril as needed for leg and back pain. Plaintiff described poor sleep and poor appetite, dysphoric moods, crying spells, difficulty concentrating, isolating herself from others, thoughts of death with no plan to harm herself, episodes of too much energy in which

she spoke loudly, excessive worry, flashbacks to unpleasant experiences, and panic attacks when

leaving home or in crowds.  Dr. Arrington reported:

> MENTAL STATUS EXAMINATION:
>
> On examination, the claimant's demeanor and responsiveness to questions were guarded.  Her manner of relating, social skills, and overall presentation were marked by agitation.  Appearance:  The claimant appeared her stated age.  She was dressed casually.  Hygiene and grooming were fair.  Gait and posture were normal. Motor behavior was restless.  Eye contact was poor.  Speech: The claimant's speech intelligibility was fluent.  The quality of her voice was clear.
>
> Expressive and receptive language were adequate.  Thought Processes:  The claimant's thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting.  Affect:  The claimant's affect was agitated and depressed.  Mood:  The claimant's mood was dysthymic.  Sensorium:  Her sensorium was clear.  Orientation:  She was oriented x3.  Attention and Concentration:  The claimant's attention and concentration were intact.  She was able to do counting, simple calculations, and serial 3's.  Recent and Remote Memory Skills:  The claimant's recent and remote memory skills were mildly impaired possibly due to depression.  She was able to recall 2/3 objects immediately and 2/3 objects after 5 minutes.  She was able to repeat back 6 digits forward and 3 digits backward.  Cognitive Functioning: The claimant's intellectual functioning is estimated to be in the average range.  Her general fund of information is appropriate to her experience.  Insight:  The claimant insight is fair.  Judgment: The claimant's judgment is fair.
>
> MODE OF LIVING:
>
> On a daily basis, the claimant is able to dress, bathe, and groom herself independently.  She cooks when she is hungry.  She engages in cleaning.  She is able to do laundry.  She is able to manage money and travel independently throughout her community.  She is able to use a computer, but reported that she gets headaches after 15 minutes of using the computer.  She [is] in a program to learn medical billing and coding.  She attends this program 5 days per week. Otherwise, she is home watching television not sleeping.

(R. 270-71.)  Dr. Arrington diagnosed major depressive disorder without psychotic features; rule

out bipolar II disorder; rule out posttraumatic stress disorder; alcohol abuse, in remission.  She

recommended that Plaintiff continue her current psychiatric treatment and opined:

> With regard to the daily functioning of the claimant, she is able to follow and understand simple directions and instructions.  She is able to perform many simple

tasks independently.  She is able to maintain attention and concentration.  She will have difficulty learning new tasks and performing complex tasks independently.  She would be able to maintain a regular schedule.  Any difficulties may be attributable to depression and anxiety.  The results of the present evaluation appear to be consistent with psychiatric problems, which may significantly interfere with the claimant's ability to function on a daily basis.

(R. 271.)

In November 2013, Dr. Arrington conducted another consultative examination.  (R. 306-08.)  Plaintiff stated that she has met with a psychiatrist for the past two years and was prescribed Klonopin and Paxil.  She also took Ibuprofen for leg and back pain.  She described the same symptoms as from the previous examination, and she additionally noted episodes of "getting into arguments with others" and short- and long-term memory loss for the past few months.  Dr. Arrington's mental examination findings were also the same, except that Plaintiff was able to recall 3/3 objects immediately and 0/3 objects after 5 minutes; was able to repeat back 6 digits forward and 5 digits backward; and had a judgment range from fair to poor due to mood fluctuations.  Plaintiff's mode of living was also the same, except that her daughter did the cooking and there was no mention of participation in a program to learn medical billing and coding.   Dr. Arrington diagnosed major depressive disorder; rule out bipolar II disorder; panic disorder with agoraphobia; rule out cognitive disorder, not otherwise specified; and alcohol abuse in remission.  She again rendered the same opinion and recommended that Plaintiff continue psychiatric treatment and.

Also in November 2013, Plaintiff underwent a consultative examination with Dr. Justin Fernando (general surgery).  She stated that she traveled by bus to the appointment, was married, lived with her family, and had to stop working in 2009 due to severe pain throughout her spine.  She listed her medications as Klonopin, Paxil, Ibuprofen, and Naproxen.  She complained of severe pain from the neck, into the lower back, and into the lower extremities.  The pain was intense when standing but was also aggravated by sitting and walking.  The pain in her lower extremities was

sometimes associated with paresthesia.  Physical examination findings included:  no acute distress;

normal gait and station; no assistive device; incomplete squat; normal ranges of motion in lower

extremities and cervical and lumbar spines; no neurological deficits; normal straight leg raising;

and no indication of tenderness over the spine, paraspinal areas, sacroiliac joints, and sciatic

notches.  Dr. Fernando assessed:  chronic lower back pain with bilateral subjective symptoms of

radiculopathy (no clinical indication of disk involvement and no clinical indication of nerve

impingement); history of hypertension (has not been consistently treated); and history of

depression (not addressed in this examination).  Dr. Fernando opined:

> The claimant's symptoms of pain in her lower back with aggravation of the pain in
> the uptight position whether standing, walking or even sitting could be a source of
> discomfort and pain as she claims, but the physical examination apart from the fact
> it did not reveal any restriction in mobility in the spine or in the peripheral joints of
> the limbs.  It did not indicate any evidence of reflexes showing any indication that
> nerve roots have undergone impingement in the lower part of the lumbar vertebrae.
> Reflexes being as brisk and being as equal as they were, it seems unlikely that any
> conclusion can be drawn regarding the presence of disk abnormality or nerve
> impingement in the lower part of the lumbar/lumbosacral roots.

(R. 303-13.)

### 3.    State Agency Reviewing Consultants

In December 2013, State Agency reviewing consultants opined that Plaintiff did not have

any severe physical impairments.  They also opined that she did not meet the criteria of paragraph

A and C of Listings 12.04 and 12.06 regarding her mental impairments.  As to paragraph B, they

opined that Plaintiff had mild restriction of activities of daily living; mild difficulties in

maintaining social functioning; moderate difficulties in concentration, persistence, or pace; and no

repeated episodes of decompensation of extended duration.  (R. 81-92.)  In February 2014, these

opinions were affirmed on reconsideration.   The reviewing consultants further opined on

reconsideration that "clmt can with some diff under, remem & execute instructions.  Clmt can with

some diff sustain CP&P.  Clmt can maintain social interaction.  Clmt can adapt to work-like settings.  Clmt retains sufficient MRFC for simple, routine work."  (R. 94-106.)

### B.    Non-Medical Evidence.

Plaintiff submitted Function Reports in October 2013 (R. 206-13) and January 2014 (R. 231-38) that were consistent with her testimony during the October 2015 hearing.  The Court observes that Plaintiff did not indicate in either Report that she had been prescribed or otherwise used a cane.  The ALJ's decision accurately summarized Plaintiff's testimony as follows:

> The claimant is a 50 year-old woman who responded to questions from the undersigned.  She testified that she had previously worked as a secretary for many years but stopped working in 2009 when she was laid off.  She lives by herself in affordable housing and spends her days watching TV and does not leave the house.  She also testified that she is able to take showers, clean, and do laundry.  Her daughter goes grocery shopping for her and occasionally cooks for her.  She testified that she suffers from constant leg pain that radiates from her foot up to her groin area.  She explained that her leg pain does not allow her to move her leg at times and it affects her even when she is sitting down.  Her leg gives out on her.  She thought the pain was from exercising, however, now she is being told it is from osteoarthritis and that she needs to take painkillers.  There is a lot going on and nobody is giving her an answer for her pain.  She uses a cane to ambulate when she is not on medication.  She has received treatment in the form of medication.  She underwent physical therapy for two weeks in Jersey City, however she did not have the name of the facility.  The physical therapy just made her worse so she stopped going.  She can sit 5-10 minutes, stand up to 10 minutes, walk 10 minutes and can carry ½ gallon milk.  Her side effects are that she sometimes feels as if she is having chest pain and a heart attack from the Seroquel.  She does not have a history of alcohol abuse.
>
> Upon questioning from her representative , the claimant testified that her daughter does everything for her.  Her symptoms affect her ability to pay attention and concentrate.  She is distracted by thoughts of not wanting to be here or be part of society and is sad because she wants them to find out what is wrong with her leg.  She does not go anywhere, and hasn't been to a movie in three years.  She has sporadic panic attacks every day which last 5-10 minutes.  During such attacks, her heart races and she has palpitations, she has heavy breathing and thinks that she is going to have a heart attack.  The only way to control a panic attacks is with taking Valium.  She testified that she constantly feels anxious and depressed.  She has suicidal thoughts that distract her from her daily activities.  She was not disabled when laid off in 2009, she became disabled a year later due to her leg, depression and anxiety.  She refused to take medications but was forced to.  When asked

whether she had any other side effects from her medications other than what she had previously testified to, she added that she was always restless and in sleeping mode. Her medications take away her mood swings so that she can socialize. She snaps at people when she has mood swings. She has suicidal thoughts that distract her from her daily activities and gets sporadic panic attacks that last between 5 to 10 minutes. Her pain medication causes her to feel chest pains and her psychological medication makes her feel restless and sleepy. Though she had an alcohol abuse problem in the past, she has been sober for more than a year. (Hearing Testimony).

(R. 25.) The ALJ correctly noted that Plaintiff did not fill a prescription for Seroquel until four months after the relevant period. (R. 29, 325.) The Court notes that Plaintiff was not prescribed Valium until September 24, 2014, or three months before the relevant period ended. (R. 326.)

## V.    DISCUSSION

### A.    Local Rule 9.1(e).

The Local Rules for this District require that a plaintiff's brief in a Social Security disability appeal include a separate "statement of facts with reference to the administrative record." L. Civ. R. 9.1(e)(5)(C). Plaintiff's thirty-eight page brief contains a one-paragraph section entitled "Procedural History/Statement of Facts" that contains a brief procedural history of Plaintiff's administrative claim but no statement of facts whatsoever. ECF No. 14 at 1-2; *see id.* at 3-38 (containing few, if any, record citations other than to the ALJ's decision). Moreover, Plaintiff's brief fails to comply in other respects with Local Civil Rule 9.1(e)(5). For example, there is no meaningful "statement of the issues presented for review." L. Civ. R. 9.1(e)(5)(A); *see* ECF No. 14 at 2 (one-sentence section entitled "Issue" stating only that "[t]he primary determination for this Court is whether the Commissioner's decision is supported by substantial evidence"). An additional failing is that counsel's arguments are routinely unnecessarily caustic.

Since May 4, 2018, the undersigned has decided twenty-seven Social Security disability appeals in which the plaintiff was represented by Plaintiff's counsel in the present case. The

plaintiff's brief in each of those cases has had similar failings.  It is not the Court's burden to sift through Plaintiff's muddled arguments to determine the bases for appeal and then comb through the record searching for support.  Plaintiff's counsel, the law firm of Langton & Alter, Esqs., has been notified that any brief filed after May 13, 2019 that does not comply with Local Civil Rule 9.1(e) will be rejected, and any fees for re-briefing will not be credited when considering the reasonableness of fees for successful appeals.  *See Little v. Berryhill*, No. 2:17-cv-11708 (PAZ), 2019 U.S. Dist. LEXIS 82127, at *44-46 (D.N.J. May 13, 2019).  The Court reiterates such notification.  The Court will consider the effect, if any, that Plaintiff's counsel's failure to comply with Local Civil Rule 9.1(e) (and the corresponding burden placed on the Court) should have on any award of fees in this case and will adjust those fees accordingly.

### B.    Due Process.

Plaintiff contends that "[t]he ALJ's unexplained termination of plaintiff's testimony for no stated reason other than that the ALJ was in some sort of hurry, violated Plaintiff's due process rights and raises the appearance of bias against plaintiff and her claim[.]"  ECF No. 14 at 27. Plaintiff liberally cites to *Ventura v. Shalala*, 55 F.3d 900 (3d Cir. 1995) in support of a Social Security claimant's undisputed right to a fair hearing before an impartial ALJ.  *See id.*, 55 F.3d at 902.  In *Ventura*, the Third Circuit ordered a new hearing before a different ALJ because the original ALJ had engaged in coercive, intimidating, and irrelevant questioning of the claimant and had improperly interfered with the claimant's attempt to introduce favorable evidence from a treating physician.  *See id.* at 903-04.  Plaintiff does not identify any such misconduct in this case.

Plaintiff's testimony in response to the ALJ's respectful and patient questioning comprises approximately 10 transcript pages (R. 42-51).  Plaintiff's testimony in response to her counsel's questioning comprises approximately 14 transcript pages (R. 51-65).  After the ALJ twice asked

Plaintiff's counsel "not to lead and suggest answers" (R. 60-61, 65), the following exchange

occurred:

| | |
|---|---|
| ALJ: | Okay, I think we've had enough testimony from your claimant and we're going to move on right now.  I have a whole [docket] full of cases today and I think I've gotten a good flavor for what your client is alleging and I think we need to move on okay? |
| ATTY: | (No verbal response.) |
| ALJ: | I'm sorry, did you have something to say?  I'm asking you a question.  Is there something that – did you finish?  Do you have – and I'm asking you a question. |
| ATTY: | I didn't realize you were asking me a question, Your Honor.  I didn't realize that. |
| ALJ: | Okay. |
| ATTY: | I thought you just said we'd heard enough from the claimant. |
| ALJ: | I think we've heard enough unless there's something in particular that you think we haven't covered? |
| ATTY: | Well, I had more questions, but if you feel – |
| ALJ: | I think – |
| ATTY | – you've heard enough and – |
| ALJ: | – I have heard enough. |
| ATTY: | Okay. |
| ALJ: | Okay, thank you. |
| ATTY: | I mean, I wasn't arguing. |
| ALJ: | Okay, just you just didn't respond, so – |
| ATTY: | I – |
| ALJ: | – I was just asking. |

(R. 65-66.)  The ALJ specifically gave Plaintiff's counsel the opportunity to identify relevant

topics on which Plaintiff had not yet testified.  Plaintiff's counsel opted not to do so and failed to

articulate for the ALJ any due process or bias concerns.  Nor did Plaintiff identify for the Appeals

Council any specific evidence that her counsel was prevented by the ALJ from presenting

favorable evidence the hearing.  Indeed, Plaintiff did not seek Appeals Council review of an

alleged due process violation or appearance of bias.  This was not a surprising strategy because

nothing in the "record, viewed objectively, reasonably supports the appearance of prejudice or

bias." *In re Antar*, 71 F.3d 97, 101 (3d Cir. 1995), *overruled on other grounds by Smith v. Berg*,

247 F.3d 532, 534 (3d Cir. 2001).  Having failed to present such evidence in this Court, the Court

finds that Plaintiff was not prejudiced by the ALJ's conduct.

### C.    Step Three.

At Step Three, the ALJ found:

> The claimant's degenerative joint disease does not meet or equal listing 1.02.  While
> the claimant has been diagnosed with osteoarthritis and arthralgia for her joint pain,
> further medical testing and studies found relatively unremarkable results.  (3F,
> 10F).  Similarly, a physical examination by the consultative examiner showed
> normal results.  Specifically, the examination did not reveal any deficits in
> ambulation or manipulative function.

(R. 22-23.)[7]  The ALJ also found that "[t]he severity of the claimant's mental impairments,

considered singly and in combination, did not meet or medically equal the criteria of listing 12.04"

because Plaintiff did not meet the paragraph B or paragraph C criteria.  (R. 23-24.)  Plaintiff's

attack on these findings is multifold.  As to her physical impairments, Plaintiff does not challenge

the ALJ's finding that her degenerative joint disease and osteoarthritis do not satisfy Listing 1.02.

Instead, Plaintiff contends that the ALJ committed reversible errors by not evaluating her

degenerative disc disease under Listing 1.04 (Disorders of the spine) and by not considering

whether the combination of her physical impairments is medically equivalent to any Listing.  As

to her mental impairments, Plaintiff contends that substantial evidence does not support the ALJ's

finding that her depressive disorder does not satisfy Listing 12.04 (Affective disorders); the ALJ

committed reversible error by not evaluating her anxiety disorder under Listing 12.06 (Anxiety-

---

[7] The Court analyzes all Listing criteria, as did the ALJ, as of March 9, 2016, the date of the ALJ's decision.
The applicable criteria are described in Social Security Administration Program Operations Manual System
("POMS") POMS DI 34121.011, *Musculoskeletal Listings from 6/16/2008 to 9/28/2016*, available at
https://secure.ssa.gov/apps10/poms.nsf/lnx/0434121011; POMS DI 34132.009, *Mental Listings from
12/18/07 to 09/28/16*, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0434132009.

related disorders); and by not considering whether the combination of her mental impairments is medically equivalent to any Listing.

The Third Circuit instructs that the ALJ need not "use particular language or adhere to a particular format in conducting analysis" so long as "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [claimant] did not meet the requirements for any [L]isting." *Jones*, 364 F.3d at 505 ("the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review"); *see Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008) (ALJ need not mention any specific Listing to make judicially reviewable finding); *Lopez v. Comm'r of Soc. Sec.*, 270 F. App'x 119, 121-22 (3d Cir. 2008) ("An ALJ's failure to discuss specific Listing is not a reversible error if [s/]he analyzed all the probative evidence and explained [her/]his decision sufficiently to permit meaningful judicial review."); *Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146-47 (3d Cir. 2007) (ALJ's "fail[ure] to identify the listing that came closest to matching [claimant's] impairments" was not reversible error where ALJ "clearly evaluated the medical evidence") (all citing *Jones*). Thus, the Court must determine whether the evidentiary discussion – regardless of its placement in the ALJ's decision – supports a finding of not disabled at Step Three – regardless of whether the ALJ's decision even cites to a Listing – pursuant to the applicable legal standards.

### 1. Physical Impairments.

Plaintiff first argues that the ALJ erred by failing to evaluate her degenerative disc disease under Listing 1.04, which provides:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

OR

B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in 1.00 B2b.

POMS DI 34121.011.  The Step Four section of the ALJ's decision included a detailed discussion of all record evidence.  (R. 24-31.)  Neither the ALJ's decision nor Plaintiff's brief points to any evidence that Plaintiff's degenerative disc disease meets Listing 1.04's threshold criteria or the criteria of paragraphs A, B, or C.  As to the threshold criteria, there is no evidence that Plaintiff has a spine disorder resulting in compromise of a nerve root or the spinal cord.  (*See* R. 26 (noting "no clinical evidence of disc involvement or nerve impingement").)  As to paragraph A, the medical records summarized by the ALJ for the period after the alleged onset date reflect no evidence of nerve root compression.  As to paragraph B, there is no clinical or symptomatic evidence of spinal arachnoiditis.  As to paragraph C, there is no evidence of lumbar spinal stenosis resulting in pseudoclaudication, and – as the ALJ found for Listing 1.02 and Plaintiff does not dispute – Plaintiff can ambulate effectively.[8]  Having identified no relevant evidence overlooked

---

[8] The parties dispute whether Plaintiff was prescribed a cane during the relevant period.  Under Listing 1.00 B2b, "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning (*see* 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the

by the ALJ, the Court finds that substantial evidence supports the ALJ's Step Three finding that Plaintiff's degenerative disc disease did not meet Listing 1.04. Alternatively, the Court finds that any error as to this Listing was harmless. *See Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162 (3d Cir. 2008) (affirming Step Three finding where claimant "provides us with no citations to any record evidence demonstrating that her impairments are of Listing-level severity"); *Domkos v. Colvin*, No. 15-cv-2660 (JLL), 2016 WL 1732380, at *3 (D.N.J. May 2, 2016) (remand not warranted when claimant failed to cite evidence that Listing was met because "[i]t is not enough to simply call foul and punt to this Court for research and analysis.").

### 2.    Mental Impairments.

#### a)    *Listing 12.04.*

Listing 12.04 is met when the criteria of *both* Paragraphs A and B are satisfied, *or* when the criteria of *only* Paragraph C are satisfied. *See* POMS DI 34132.009. Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff's depressive disorder fails to meet Listing 12.04. The Court disagrees.

Plaintiff correctly observes that "the A criteria of Listing 12.04 are not reviewed or compared with the evidence." ECF No. 14 at 20. Plaintiff asserts:

> [L]ike all psychiatric listings, 12.04 insists that an applicant must meet the paragraph A criteria as a prerequisite for further consideration of medical equivalence. Only upon such satisfaction of the A criteria can presumptive disability be established by meeting either the paragraph B or the paragraph C criteria. Here, the paragraph A criteria of listing 12.04 are not mentioned at all and thus one must conclude that the A criteria of 12.04 are satisfied to the satisfaction of the ALJ because only the paragraphs B and C criteria are subject to any analysis whatsoever.

---

functioning of both upper extremities." POMS DI 34121.011 (Listing 1.00J requires an examination of the claimant's ability to ambulate without the assistive device(s) in place). The Court need not resolve the parties' dispute for purposes of Step Three because there is no evidence that use of a cane limited the functioning of *both* of Plaintiff's upper extremities.

ECF No. 14 at 20. Plaintiff's assertion is wrong as a matter of fact because the ALJ's silence cannot be construed as a finding. Plaintiff's assertion is also wrong as a matter of law because – as Listing 12.04 existed when the ALJ's decision was issued – it was not necessary for the ALJ to discuss paragraph A after finding that Plaintiff did not satisfy the criteria of paragraphs B or C. POMS DI 34132.009; *see Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 813-14 (3d Cir. 2016); *Nunez v. Comm'r of Soc. Sec.*, No. 2:14-cv-4664 (KM), 2015 WL 4770991, at *4 (D.N.J. Aug. 12, 2015).[9]

To satisfy Paragraph B, a claimant must demonstrate marked limitations in at least two of three functional categories or a marked limitation in one category together with repeated episodes of decompensation (each of extended duration). POMS DI 34132.009. A marked limitation means more than moderate but less than extreme and "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*, Listing 12.00C (citing 20 C.F.R. § 404.1520a). "Episodes of decompensation" are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* "Repeated episodes" of "extended duration" means three episodes of decompensation within one year, or an average of once every four months, each lasting for at least two weeks. *Id.* The ALJ found that Plaintiff did not meet the paragraph B criteria because she had mild restriction in activities of daily living; moderate difficulties in each social functioning

---

[9] As discussed below, the case must be remanded for a new paragraph B finding. The ALJ must consider paragraph A on remand if the paragraph B criteria are satisfied.

and concentration, persistence, and pace; and no episodes of decompensation of extended duration.

Plaintiff contends that substantial evidence does not support the ALJ's findings as to social

functioning and concentration, persistence, and pace.

For purposes of paragraph B, "social functioning" refers to the claimant's "capacity to

interact independently, appropriately, effectively, and on a sustained basis with other individuals."

POMS DI 34132.009, Listing 12.00C2.  Plaintiff complains:

> [The ALJ's finding of] moderate limitations in social functioning are entirely based
> on the plaintiff's own report of "being able to take public transportation to all her
> consultative examinations" (Tr. 23).  This one aspect outweighs "mood swings",
> "snapping at people" and "panic attacks when she leaves home" (Tr. 23).  Simply
> isolating cherry-picked phrases and findings which suit a particular view of the
> evidence does not present a dispassionate or realistic view of the record or the basis
> for any finding or conclusion.

ECF No. 14 at 23.  This is an unfair criticism.  As the ALJ explained, Plaintiff testified that

medications controlled her behavior.  (R. 23.)  Plaintiff also testified that she attended a program

five days per week to learn medical coding and billing as part of an ongoing effort to seek new

employment, that she was able to travel by public transportation generally and not just for medical

appointments, and that she was able to shop in stores.  This testimony, together with pharmacy

records confirming that Plaintiff did not take Valium for panic attacks until three months before

her date last insured, is substantial evidence of no more than a moderate limitation in social

functioning during the relevant period.  Plaintiff points to no persuasive contrary evidence.  Dr.

D'Amato's "opinions" that Plaintiff had poor to no ability to deal with the public, interact with

supervisors, behave in an emotionally stable manner, and relate predictably in social situations are

rendered in a checkbox form apparently created by Plaintiff's counsel.  Although Plaintiff argues

that "[t]hese treating opinions are based on psychiatric therapy progress notes from 2013 through

2015 (Tr.319-24)," Plaintiff does not cite to any specific treatment note.  This is not surprising;

26

Dr. D'Amato's notes are mostly illegible and primarily reflect medication management.  The Court therefore finds no error in the ALJ's assignment of little weight to Dr. D'Amato's opinions because they are "inconsistent with the claimant's own testimony, Dr. Arrington's findings and the claimant's non-compliance with her medication regimen."  (R. 30.)

For purposes of paragraph B, "concentration, persistence, or pace" refers to the claimant's ability "to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  POMS DI 34132.009, Listing 12.00C3.  The ALJ found that Plaintiff had moderate difficulties:  "The claimant showed mildly impaired memory skills, but was able to recall most things and she demonstrated intact attention, concentration and coherent thought process at the psychiatric consultative examination.  (2F; 6F)."  (R. 23.)  Plaintiff's reliance on Dr. D'Amato's opinions is misplaced for the reasons explained above.  The Court is also not persuaded by Plaintiff's argument that the ALJ erred by omitting reference to Dr. Arrington's opinion that "[t]he results of the present evaluation appears to be consistent with psychiatric problems which may significantly interfere with the claimant's ability to function on a daily basis."  ECF No. 14 at 22 (citing  R. 271).  This aspect of Dr. Arrington's opinion does not speak to Plaintiff's specific functional limitations, and it conflicts with Dr. Arrington's examination findings – on two occasions – that Plaintiff's attention and concentration were intact; she could do counting, simple calculations, and serial 3s; and her recent and remote memory skills were mildly impaired possibly due to depression.  Nor is the Court persuaded by Plaintiff's argument that the ALJ erred by omitting reference to Dr. Arrington's opinion that Plaintiff "will have difficulty learning new tasks and performing complex tasks due to difficulty with memory."  ECF No. 14 at 23 (citing R. 308).  Dr. Arrington also opined that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently,

maintain attention and concentration, and maintain a regular schedule. Dr. Arrington's opinions in these respects is consistent with the State Agency reviewing consultants. The Court therefore finds no error in the ALJ's assessment of Dr. Arrington's opinions. The Court alternatively finds that, even if the ALJ had erred in finding that Plaintiff experienced only moderate limitation in concentration, persistence, and pace, such error would be harmless because substantial evidence does not support a marked limitation in either of paragraph B's remaining functional categories or repeated episodes of decompensation of extended duration.

> Paragraph C of Listing 12.04 requires:
>
> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

POMS DI 34132.009. The ALJ stated:

> In this case, the claimant has demonstrated being able to live by herself, take care of herself and taking public transportation on her own. (Hearing Testimony; 6F). There is also no evidence of decompensation episodes or evidence of her condition worsening. (4F; 6F; Hearing Testimony). As such, the evidence in the record suggests that, although the claimant's disorders cause some limitation, it is not restricted to the level required to meet the "C" criteria for the listing[] 12.04.

(R. 23-24.) As discussed above, substantial evidence does not support a finding that Plaintiff suffered any episode of decompensation of extended duration during the relevant period. Plaintiff

points to no evidence that either remaining criterion is satisfied. The Court therefore finds that substantial evidence supports the ALJ's finding that paragraph C of Listing 12.04 was not satisfied.

### b)    *Listing 12.06.*

Unlike Listing 12.04, Listing 12.06 is met when the criteria of *both* paragraphs A and B are satisfied, *or* when the criteria of *both* paragraphs A and C are satisfied. POMS DI 34132.009. The criteria for paragraphs A and C differ between Listings 12.04 and 12.06, but both Listings share the same paragraph B criteria. POMS DI 34132.009. The Court finds that any error by the ALJ as to Listing 12.06 was harmless. As discussed above, substantial evidence supports the ALJ's finding that Plaintiff did not satisfy the paragraph B criteria. Moreover, Plaintiff does not cite any evidence that her mental impairments "result[] in complete inability to function independently outside the area of one's home" – which is the sole paragraph C criterion for Listing 12.06.

### 3.    Combined Impairments.

Plaintiff further argues that the ALJ's decision was flawed because it did not sufficiently explain why Plaintiff's combined physical impairments or her combined mental impairments did not medically equal the severity of any Listing. The Court agrees. Although the ALJ's decision included a detailed evidentiary discussion, the Court cannot meaningfully review the Step Three finding in this regard absent some indication of the ALJ's substantive Listings analysis. Nevertheless, remand is warranted only if the ALJ's error was not harmless. Plaintiff bears the burden of explaining how the ALJ's decision would be different but for the ALJ's error. *See Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016) (plaintiff must "explain[] how, even if the ALJ's analysis was lacking, the deficiency was harmful to [her/]his claims," including "affirmatively point[ing] to specific evidence that demonstrates [s/]he should succeed");

*Gullace v. Comm'r of Soc. Sec.*, No. 15-cv-7630 (FLW), 2017 WL 714356, at *10 (D.N.J. Feb. 23, 2017) (same) (citing *Woodson*). Plaintiff does not explain why her combined degenerative joint disease, osteoarthritis, and degenerative disc disease are medically equivalent to any specific Listing. Nor does she explain why her combined depressive disorder and anxiety disorder are medically equivalent to any specific Listing. *See* ECF No. 14 at 19. The Court therefore finds that any error in the ALJ's Step Three finding as to Plaintiff's combined physical or mental impairments was harmless. *See Holloman*, 639 F. App'x at 814 (affirming Step Three finding where claimant complained "in vague terms that certain impairments were not properly compared" to Listings without identifying "specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not"); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 (3d Cir. 2007) (affirming Step Three finding where claimant did not "point to any medical evidence ignored by the ALJ that would indicate that [claimant's] impairments are equivalent to one of the Listings the ALJ identified"); *Cosby*, 231 F. App'x at 146 (affirming Step Three finding where Plaintiff "does not point to any medical evidence ignored by the ALJ that would show that [claimant's] impairments medically equaled one of the listings").

**D.    Step Four.**

At Step Four, the ALJ found:

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to: occasional climbing of ramps and stairs; never climbing up ladders, ropes or scaffolds; occasional balance and stooping; never crouching, kneeling, or crawling; unskilled work and occasional interaction with the public and co-workers.

(R. 24.) Plaintiff contends that the RFC is not supported by substantial evidence because it is based on the ALJ's erroneous assessment of treating physician opinions and does not include all her credibly established limitations.

### 1.    Physical Impairments.

Plaintiff argues that, as to limitations attributable to her physical impairments, the ALJ ascribed too little weight to the opinions of Drs. Fogari and Kern and too much weight to the opinion of Dr. Fernando.  The Court disagrees.

First, the ALJ was required to consider Plaintiff's cane in crafting the RFC finding only if the device was medically required.  As instructed in Social Security Ruling 96-9p:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).  The adjudicator must always consider the particular facts of a case.

SSR 96-9p, *Titles II & XVI:  Determining Capability To Do Other Work – Implications Of A Residual Functional Capacity For Less Than A Full Range Of Sedentary Work*, 1996 WL 374185, at *7 (S.S.A. Jul. 2, 1996); *see Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (insufficient evidence that physician-prescribed cane was medically required absent physician's discussion of medical necessity) (citing S.S.R. 96-9p).  The ALJ explained:

> Although the claimant saw Dr. Forgari for 4 visits during 2014, on the last visit he wrote that the claimant needs a cane.  His own treatment notes do not support this opinion in that on the three previous visits, no mention is made of a need for a cane.  On the last visit on 12/8/14, Dr. Forgari noted that there were no interval changes, no new complaints and all other negative review of systems (ROS).  Finally, the claimant appeared at the hearing without a cane and both consultative examiners noted that she did not require an assistive device (12F, IF, pg. 5, 7F, pg. 1).

(R. 30.)[10]  Plaintiff does not explain why Dr. Forgari omitted during three previous visits that she needed a cane, nor does Plaintiff explain the apparent conflict between such need and treatment

---

[10] Plaintiff asserts that the ALJ's recollection is incorrect because Plaintiff used a cane at the hearing.  ECF No. 14 at 32 n.8 (citing R. 30).  The Court need not resolve this issue because Plaintiff's use of a cane is not proof that the device was medically prescribed.  For the same reason, Plaintiff was not prejudiced if Plaintiff's counsel was unable to question her during the hearing regarding her use of a cane.  *See id.*

notes reflecting normal physical examination findings. Based on this record, the Court finds that substantial evidence supports both the ALJ's assignment of little weight to Dr. Forgari's opinion that Plaintiff needs a cane and the exclusion of a cane from the RFC finding. *See Rodriguez v. Comm'r of Soc. Sec.*, No. 16-cv-02807 (SDW), 2017 WL 935442, at *7-8 (D.N.J. Mar. 9, 2017) (finding same where treatment record did not explain why prescribed cane was medically necessary, treatment notes reported normal gait, and Plaintiff was able to walk without cane). The Court alternatively finds that any error by the ALJ in this regard was harmless, because the cane was not prescribed until December 8, 2014 – merely twenty-three days from the end of the relevant period.

Second, Plaintiff argues that the ALJ erred by ascribing "some weight" to Dr. Kern's opinion. The ALJ explained:

> Dr. Kern found that the claimant did not need an assistive device, should be limited to lifting 20 pounds and was limited in repetitive squatting and forward spine flexion, could walk less than 3 blocks, stand 20 minutes and sit 45 minutes. (1F, pg. 3). However, Dr. Kern was not able to see the later MRI and radiology reports, which illustrated minimal spinal issues and minimal degenerative arthritis of the hips. (3F, 10F, 12F, 4F, p.16). Further, treatment records dated after this evaluation show minimal conservative treatment of the claimant's musculoskeletal impairments.

(R. 29.) Plaintiff complains that the ALJ discounted only the portion of Dr. Kern's opinion that would support a disability finding – walking limited to 3 blocks, standing limited to 20 minutes, and sitting limited to 45 minutes – based on speculation "that Dr. Kern was in the dark regarding the true nature of Plaintiff's pathology[.]" ECF No. 14 at 32. The Court agrees; Dr. Kern's opinion was based on her medical training and her one-time physical examination of Plaintiff. However, the Court finds that such error was harmless. The ALJ, and not any physician, is ultimately responsible for crafting the RFC finding. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011)). Plaintiff offers no explanation for the discrepancy between on the one hand, the

severe restrictions opined by Dr. Kern, and on the other hand, Dr. Kern's physical examination findings (*see* R. 26), *all* subsequent medical imaging reports (including x-rays taken on the same date as Dr. Kern's examination (R. 268; *see* R. 26-27)), and the other medical evidence (including from Plaintiff's treating physicians (*see* R. 26-27)).

Third, Plaintiff argues that "[t]he ALJ placed the entire physical RFC upon the report of Dr. Fernandez, the Commissioner's internist, who found virtually nothing wrong with the plaintiff."  ECF No. 14 at 33.  The ALJ explained:  "The opinion of consultative examiner Justin Fernando that the claimant did not need an assistive devi[c]e is given great weight in that his clinical examination did not reveal any restriction in mobility of the spine or in the peripheral joints."  (R. 29.)  Plaintiff's bases for challenging the ALJ's assessment is that Dr. Fernandez also has a specialty in cardiothoracic vascular surgery and that Dr. Fernandez does not appear to have reviewed any of the medical imaging reports in the record.  ECF No. 14 at 33.  The Court is not persuaded by either argument.  There is no evidence that Dr. Kern was better qualified to examine Plaintiff, report on her range of mobility, and opine as to any physical limitations. Indeed, Dr. Kern and Dr. Fernando had consistent examination findings.  Moreover, like Dr. Kern, Dr. Fernando's opinion was based on his medical training and his one-time physical examination of Plaintiff. There is no evidence that Dr. Fernando's opinion would have included any physical limitations had he reviewed unremarkable medical imaging reports from August 2012 through May 2013 that at worst revealed minimal arthritis in the left hip and no spinal injuries.

### 2.    Mental Impairments.

Plaintiff contends that, as to limitations attributable to her mental impairments, the ALJ ascribed too little weight to the opinions of Drs. D'Amato and Arrington.  These arguments are recycled from Step Three, where Plaintiff argued that the ALJ's erroneous assessment resulted in

moderate (and not marked) limitations in social functioning and concentration, persistence, and pace.  At Step Four, Plaintiff argues that the same erroneous assessment resulted in an RFC finding that does not reflect all of Plaintiff's credibly established limitations in social functioning and concentration, persistence, and pace.  For the reasons explained in Section V.C. above, the Court finds that substantial evidence supports the ALJ's assessment of the opinions of Drs. D'Amato and Arrington.  The Court also finds that the RFC limitations to unskilled work and occasional interaction with the public and co-workers are supported both by these opinions and the opinions of the State Agency reviewing consultants.  Since Plaintiff does not identify any evidence that would support additional limitations attributable to her mental impairments, the Court finds no error in the ALJ's RFC finding in this regard.

      **E.**      **<u>Step Five.</u>**

      The ALJ's RFC finding did not specify the total number of hours in each workday that Plaintiff could stand, walk, and/or sit.  Instead, the RFC limited Plaintiff to light work pursuant to 20 C.F.R. § 404.1567(b) ("Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.")  Plaintiff correctly cites Social Security Ruling 83-10 that "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time."  S.S.R. 83-10, *Titles II & XVI:  Determining Capability To Do Other Work – The Medical-Vocational Rules Of Appendix 2*, 1983 WL 31251, at *6, (S.S.A. 1983).  Plaintiff contends that the ALJ did not satisfy the Commissioner's burden of proof because "[i]n the instant case, the

VE testified that the jobs for which plaintiff was denied required the worker to be standing/walking all 8 hours (Tr. 75-76)." ECF No. 14 at 31 n.7; *see id*. 34 n.11.

> Q    Thank you.  Am I correct in assuming that the three jobs you gave us being light work, that she would be predominantly performing those jobs on her feet?
> A    Yes.
> Q    Okay.  Is it – I know the *DOT* defines light as at least six hours a day.
> A    Six hours out of an eight-hour day, yes.
> Q    Correct, but the jobs that you cited, is it accurate to say that she would be on her – that the worker would be on their feet virtually the entire workday?
> A    Six hours out of an eight-hour day.
> Q    Please listen to my question for a moment, sir.  I understand that the *DOT* defines light work as six hours a day, but the jobs that you gave us today –
> A    Yes.
> Q    – wouldn't they be on their feet the entire time they were working?
> A    Yes.
> Q    Okay.  For instance, a cleaner is cleaning, correct?
> A    Right.
> Q    Cleaning offices/cleaning houses?
> A    Right.
> Q    Okay.  During that entire period, whether she's working for five hours or eight hours, she's standing on her feet?
> A    That's correct.
> Q    The assembler that you gave us, the 706.684-022, I assume that the worker does that at a workstation, correct?
> A    That's correct.
> Q    And the workstation is set up for the worker to be standing while they assemble, correct?
> A    That's correct.
> Q    So the entire time that they would be assembling they would be standing?
> A    That's correct.
> Q    The office aide
> A    The same thing, Counselor.

(R. 74-76.)  The ALJ did not discuss this testimony, and Defendant did not brief the issue.  On its face, the VE's testimony suggests that a hypothetical individual with Plaintiff's RFC could not perform any of the three jobs listed in the ALJ's decision:  housekeeping cleaner, small products assembler, and office aide.  The Court therefore finds that remand is warranted for a new Step Five

finding from the ALJ whether any job existed in significant numbers in the national economy and could be performed by an individual with Plaintiff's age, education, work experience, and RFC

## V.    CONCLUSION

For these reasons, the Court reverses the Commissioner's decision that Plaintiff was not disabled and remands the case to the Commissioner for further proceedings in accordance with the preceding instructions and the accompanying Order.


Dated:   July 24, 2019                           s/ Paul A. Zoss
At Newark, New Jersey                    PAUL A. ZOSS, U.S.M.J.